UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KINDRED HOSPITALS EAST, L.L.C.
d/b/a KINDRED HOSPITAL – BAY
AREA – ST. PETERSBURG

          Plaintiff,

v.                                Case No.: 8:17-cv-1106-T-24MAP

BUFFALO BOARD OF EDUCATION;
BUFFALO BOARD OF EDUCATION
EMPLOYEE BENEFIT PLAN; and
HEALTHNOW NEW YORK, INC.
d/b/a BLUECROSS BLUESHIELD OF
WESTERN NEW YORK,

          Defendants.

_____/

## ORDER

This cause comes before the Court on Defendants' motion to dismiss Plaintiff's

complaint or, in the alternative, motion to transfer venue (the "Motion") (Doc. 6), Plaintiff's

response in opposition to the Motion (Doc. 21), and Defendants' reply to Plaintiff's response

(Doc. 32). For the following reasons, this case will be **TRANSFERRED** to the United States

District Court for the Western District of New York, Buffalo Division. [1]

### I.    Background

Plaintiff Kindred Hospitals East, L.L.C. d/b/a Kindred Hospital – Bay Area – St.

Petersburg ("Kindred") filed its complaint in this action in state court seeking payment from

Defendants the Buffalo Board of Education (the "Board"), the Buffalo Board of Education

_____

[1] Defendants also filed a motion for protective order staying discovery pending resolution of the
Motion (Doc. 23), which Plaintiff opposes. (Doc. 36). Because the Motion is now resolved, the
motion for protective order is DENIED AS MOOT.

Employee Benefit Plan (the "Plan") (together, the "Plan Defendants"), and HealthNow New York, Inc. d/b/a BlueCross BlueShield of Western New York ("HealthNow") for the care and treatment provided to a patient (the "Insured"), who was a member of the Plan. (Doc. 2). Kindred's complaint contains the following pertinent allegations: Kindred is a limited liability company that owns and operates a hospital located in St. Petersburg, Florida. (Doc. 2, ¶¶ 2, 21–24). The Plan is an employee welfare benefit plan, qualifying as a governmental plan within the meaning of 29 U.S.C. § 1002(32), with its principal place of business in Buffalo, New York. (Doc. 2, ¶ 3). The Board, a municipal entity organized under the laws of the State of New York with its principal place of business in Buffalo, New York, is the administrator and sponsor of the plan. (Doc. 2, ¶ 4). HealthNow, the claim processor of the Plan, is a New York corporation with its principal place of business in Buffalo, New York. (Doc. 2, ¶ 5).

Kindred provided care and treatment to the Insured, a former school teacher who had coverage under the Plan. (Doc. 2, ¶ 11). As part of the admission process, the Insured's daughter assigned to Kindred the Insured's rights to benefits under the Plan. (Doc. 2, ¶ 19). Further, on September 14, 2015, Kindred contacted HealthNow to verify coverage and terms of payment under the Plan. ((Doc. 2, ¶ 12). During this phone conversation, HealthNow misrepresented that Kindred would receive payment under the Plan at Kindred's local BlueCross contract rate for providing services to the Insured. ((Doc. 2, ¶ 41). HealthNow subsequently denied Kindred's claim for benefits under the Plan. (Doc. 2, ¶ 16).

Based on these facts, the complaint contains counts for breach of written contract against the Plan Defendants (Count I), breach of oral contract (Count II), breach of implied-in-fact contract (Count III), negligent misrepresentation (Count IV), false information negligently supplied for the guidance of others (Count V), and promissory estoppel (Count VI) against all

Defendants, and declaratory relief (Count VII) against the Plan Defendants. Defendants now move to dismiss the complaint for 1) lack of personal jurisdiction, 2) lack of standing, 3) failure to state a claim upon which relief can be granted, and 4) failure to join necessary and indispensable parties.[2] (Doc. 6). In the alternative, Defendants argue that this action should be transferred to the United States District Court for the Western District of New York, Buffalo Division (the "WDNY"). (Doc. 6). Kindred opposes the motion to dismiss but states that if the Court finds that personal jurisdiction is lacking as to one or more Defendants, it agrees that transfer to the WDNY is appropriate. (Doc. 21).

In support of the Motion, Defendants filed the affidavit of Geoffrey Pritchard, the CFO of the Board, who affirms that the Board and the Plan have never done business in Florida, have never held any certificates of licenses in Florida, have never maintained any offices or places of business in Florida, have never maintained a registered agent in Florida, have never conducted any advertising in Florida, have never solicited any business in Florida, have no bank accounts or property holdings in Florida, have never targeted Florida residents in regards to inclusion in the Plan, and all decisions vis-à-vis benefits payable under the plan are made in New York. (Doc. 6-2). Pritchard further states that the Insured was eligible to participate in the Plan by virtue of the Insured's employment with the Buffalo Board of Education and, at the time the Insured became eligible to participate in the Plan, the Insured was domiciled in New York. (Doc. 6-2, ¶ 21).

In addition, Defendants filed the affidavit of Paul Valley, a senior director of HealthNow, who affirms that HealthNow, as a third party administrator for the Plan, does not target Florida residents in regard to administrative services for the Plan, that the Plan was administered and all

---

[2] Defendants withdrew their arguments regarding insufficient service of process after counsel for Defendants agreed to accept service on behalf of the Board and the Plan. (Doc. 20).

decisions regarding the Plan were made in New York, and that HealthNow has never been domiciled in Florida, has never held any certifications or licenses in Florida, has never maintained any place of business or office in Florida, does not maintain a registered agent in Florida, does not conduct any advertising in Florida, does not maintain any bank accounts in Florida and does not have any property holdings in Florida. (Doc. 6-3). Moreover, Valley states that 96% of the members of the Plan are located in New York while only 1.5% (approximately 297 members) are located in Florida. (Doc. 6-3, ¶ 28).

## II.    Discussion

Courts typically address personal jurisdiction issues before subject matter jurisdiction, failure to state a claim, and venue because a "court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999); *see also Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962)[3] ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss."). In order to survive a motion to dismiss, a plaintiff must allege "sufficient facts to support a reasonable inference that the defendant can be subjected to the jurisdiction of the court." *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986) (citation omitted).

The Court applies a two-part test in determining whether the exercise of personal jurisdiction over a non-resident defendant is proper. *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F. 3d 1162, 1166 (11th Cir. 2005). The Court must first determine whether the Florida long-arm statute provides a basis for personal jurisdiction, *Sculptchair, Inc.*

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

*v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996), and then it must inquire if such exercise

of jurisdiction comports with the constitutional principles of due process, *Sun Bank, N.A. v. E.F.*

*Hutton & Co., Inc.*, 926 F.2d 1030, 1033 (11th Cir. 1991) (citations omitted).

### A. Florida's Long-Arm Statute

 "The reach of Florida's long-arm statute 'is a question of Florida law,'" and this Court

"is required to apply the statute 'as would the Florida Supreme Court.'" *Louis Vuitton Malletier,*

*S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (quoting *United Techs. Corps. v. Mazer*,

556 F.3d 1260, 1274 (11th Cir. 2009)). The long-arm statute permits jurisdiction over an out-of-

state defendant when the defendant engages in "substantial and not isolated activity within this

state," *see* § 48.193(2), Fla. Stat. (general jurisdiction), or when the defendant engages in certain

acts which are targeted at Florida and relate to the plaintiff's cause of action, *see* § 48.193(1),

Fla. Stat. (specific jurisdiction). Here, Kindred seeks the exercise of specific jurisdiction because

it asserts that its claims arise from Defendants' activities directed at Florida regarding the

Insured. Florida's long-arm statute provides in relevant part:

> (1)(a) A person, whether or not a citizen or resident of this state, who
> personally or through an agent does any of the acts enumerated in
> this subsection thereby submits himself or herself . . . to the
> jurisdiction of the courts of this state for any cause of action arising
> from any of the following acts:
>
> . . .
>
> (2) Committing a tortious act within this state.
>
> . . .
>
> (7) Breaching a contract in this state by failing to perform acts
> required by the contract to be performed in this state.

§ 48.193, Fla. Stat.

### 1. Florida Statute Section 48.193(1)(a)(2)

Section 48.193(1)(a)(2), "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (citation omitted). "[T]elephonic . . . communications into Florida may form the basis for personal jurisdiction under section [48.193(1)(a)(2)] if the alleged cause of action arises from the communications." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).

Both of Kindred's tort claims (Count IV for negligent misrepresentation and Count V for false information negligently supplied for the guidance of others) arise from the September 14, 2015 phone call in which HealthNow is alleged to have negligently misrepresented that Kindred would receive payments from Defendants at the local BlueCross contract rate.[4] While the complaint is silent as to whether this phone call was made by a Kindred employee located in Florida, Kindred has provided the uncontroverted affidavit of Phyllis Bowden, an employee of Kindred, who affirms she made the September 14, 2015 phone call from Tampa, Florida. (Doc. 21-1). Moreover, Defendants' purported actions are alleged to have caused injury to Kindred in Florida. Therefore, Florida's long-arm statute is satisfied as to Counts IV and V.

### 2. Florida Statute Section 48.193(1)(a)(7)

Under section 48.193(1)(a)(7), "the failure to pay a contractual debt where payment is to be made in Florida[] satisfies Florida's Long-Arm Statute." *Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 Fed. App'x 852, 855 (11th Cir. 2009) (citation omitted); *see also Erie Ins. Exch. V. Larose*, 202 So. 3d 148, 153 (Fla. 2d DCA 2016). Here, each of Kindred's

---

[4] While Kindred asserts that its communications were with HealthNow, it argues that HealthNow was the "agent for the Plan and Board." (Doc. 21, p. 11). The Court will assume this is true for the purposes of ruling on the Motion.

contractual claims (Count I for breach of written contract, Count II for breach of oral contract, Count III for breach of implied-in-fact contract, Count VI for promissory estoppel, and Count VII for declaratory relief) arise from Defendants' alleged failure to pay Kindred, a Florida hospital which provided services to the Insured in Florida. *See McDaniel v. Dep't of Admin, Div. of Ret.*, 450 So. 2d 572, 573 (1st DCA 1984) (holding that the long-arm statute was applicable to implied, as well as express, contracts); *Lehigh Techs., Inc. v. Farrah*, No. 2:08-cv-53-FtM-29SPC, at *5 (M.D. Fla. Jan. 23, 2009) (extending long-arm jurisdiction based on 48.193(1)(a)(7) (formerly section 48.193(1)(g)) to count for promissory estoppel). Accordingly, the long-arm statute is satisfied as to Counts I, II, III, VI, and VII.

### B. Due Process

"Even though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Licciardello*, 544 F.3d at 1284 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945)). In specific personal jurisdiction cases, courts apply a three-part due process test that considers: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant has established minimum contacts with the forum; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Wiegering v. Blue Cross and Blue Shield of Mass.*, No. 16-23031-CIV-LENARD/GOODMAN, 2017 WL 1294907, at *7 (S.D. Fla. Feb. 2, 2017) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 474–75 (1985), *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984), and *Int'l Shoe Co.*, 326 U.S. at 316). In

order for there to be such minimum contacts, "'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Sun Bank*, 926 F.2d at 1034 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). According to the Court in *Burger King*, "[t]his 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or the 'unilateral activity of another party or a third person' . . . ." 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine,* 465 U.S. 770, 774 (1984), *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299 (1980), and *Helicopteros Nacionales*, 466 U.S. at 417).

Kindred contends Defendants purposefully availed themselves of the privilege of conducting business in Florida by speaking on the phone to a Florida hospital regarding payment for care and treatment it would provide for the Insured, a Florida resident. Moreover, Kindred asserts that Defendants verified the Insured's coverage and were aware that Kindred would bill its claims through Blue Cross and Blue Shield of Florida. In addition, Defendants admit that 300 Plan members are Florida residents. On the other hand, Defendants argue that they have made no purposeful contact with Florida. Specifically, they contend that they have no business contacts with Florida and they administered the Plan in New York. They contend that any contact they had with Florida was random and fortuitous and initiated solely by the Insured.

The Court agrees with Defendants that they did not purposefully avail themselves of the privilege of conducting business within Florida. The only connection Defendants have with Florida is a result of the unilateral activity of the Insured—i.e., the Insured's moving from New York to Florida and seeking medical treatment in Florida. The fact that HealthNow and Kindred spoke on the phone regarding treatment for the Insured at a Florida hospital does not show that

Defendants deliberately engaged in significant activities within Florida. S*ee Sun Bank,* 926 F.2d at 1034 (finding no personal jurisdiction where defendant merely received and returned phone calls from Florida, during which it made allegedly fraudulent statements); *Hou v. United States*, NO. 8:06-cv-1502-T-27TGW, 2006 WL 2884963, at *3 (M.D. Fla. Oct. 10, 2006) (holding that even if plaintiff's telephone call to out-of-state defendants originated in Florida, this did "not suffice to demonstrate the [defendants'] purposeful availment of the laws of Florida, nor does it follow that the [defendants] would have any expectation of being haled into a Florida court by virtue of answering a telephone call from [p]laintiff."). Here, the Board, a Buffalo, New York municipal entity, sponsored the Plan for its New York employees. Both the Board and HealthNow, the Plan's third party administrator, administer the plan exclusively within New York. Affidavits of Geoffrey Pritchard and Paul Valley—which are uncontroverted by Plaintiff[5]—establish that Defendants are not registered to do business in Florida, do not have offices in Florida, do not solicit business in Florida, and do not target Florida residents for inclusion in the Plan. Defendants could not reasonably foresee being haled into a Florida court because the Insured took the unilateral act of seeking care in a Florida Hospital. Because Defendants' contacts with Florida are merely random, fortuitous, and attenuated*, see Burger King,* 471 U.S. at 475 (citations omitted), the Court concludes that Defendants lacked the sufficient minimum contacts to support the exercise of personal jurisdiction over Defendants.[6]

---

[5] If a defendant challenges the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits or other evidence. *See Future Tech. Today, Inc. v. OFS Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

[6] In *Weigering*, the Southern District of Florida aptly noted "[c]ourts throughout the country have addressed similar jurisdictional issues in the healthcare context and have generally held that an insurer or third-party administrator does not avail itself of the privilege of doing business in a particular state simply because the insured chose a medical provider in that particular forum and the insurer or third-party administrator pre-approved treatment or paid medical bills." 2017 WL

However, considerations of fair play and substantial justice can permit the exercise of personal jurisdiction over Defendants even though their minimum contacts with Florida ordinarily would not permit it. *Sun Bank*, 926 F.2d at 1034 (citation omitted). Relevant factors include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *Burger King*, 471 U.S. at 477) (internal quotations omitted).

Consideration of these factors do not counsel a different result. Defendants would be burdened by litigating this dispute in Florida because all of their business operations are located in New York. While Florida may have an interest in adjudicating torts committed against its citizens, this matter is essentially a billing dispute between Kindred (who, despite running a hospital located in Florida, is a Delaware company with its principal place of business in Kentucky),[7] and a New York health plan, involving the interpretation of the language of the

---

1294907, at *8 (citing *Perez v. Pan Am. Life Ins. Co.*, No. 96–20241, 1996 WL 511748 (5th Cir. 1996) (holding no personal jurisdiction existed because neither the broad policy language— which claimed to provide worldwide coverage—nor the mere approval of treatment in Texas constituted "contact" with Texas when the insurer was headquartered in Guatemala and conducted no other business in Texas); *St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*, No. CIV.A. H-08-1870, 2009 WL 47125, at *5 (S.D. Tex. Jan. 6, 2009) ("The weight of authority, however, holds that an out-of-state insurer does not subject itself to personal jurisdiction in a forum state by verifying coverage for treatment of the insured in that state and paying some of the bills for that treatment."); *Bayada Nurses, Inc. v. Blue Cross and Blue Shield of Mich.*, No. 08–1241, 2008 WL 2945388, at *1 (E.D. Pa. July 30, 2008) (holding that the insurer's payments to Pennsylvania were the result of the beneficiary's selection of the nursing provider, not the insurer's "choice to do business with [the provider] in Pennsylvania," and that telephone calls and payments were insufficient to establish personal jurisdiction)).

[7] While Kindred does not allege its residency in its complaint, it does not dispute Defendants' assertion that it is a Delaware limited liability company with its principal place of business in Kentucky.

Plan. Accordingly, New York has at least a similar interest in adjudicating this dispute involving a municipal health care plan funded by New York tax dollars. While it may be less convenient for Kindred to litigate this matter in New York, this inconvenience is no greater than the inconvenience that would be suffered by Defendants in litigating in Florida. Finally, the other factors do not make this an unusual case where fundamental fairness would lessen the ordinary minimum contacts threshold. *See Sun Bank*, 926 F.2d at 1035. For these reasons, the Court concludes that it may not exercise personal jurisdiction over Defendants.

## III.    Conclusion

While the Court concludes that it may not exercise personal jurisdiction over Defendants, the appropriate remedy is to transfer this case to the Western District of New York rather than dismiss the complaint. First, Defendants have moved in the alternative to transfer this case to the Western District of New York. Kindred, expressing statute of limitations concerns if this matter were dismissed and refiled, has agreed to the transfer if personal jurisdiction is lacking. Lastly, the parties have stated no reason why this action could not have originally been brought in the Western District of New York. Thus, the Court will transfer this case to the Western District of New York pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' motion to dismiss Plaintiff's complaint or, in the alternative, motion to transfer venue (Doc. 6) is **GRANTED** to the extent Defendants seek transfer. This case is **TRANSFERRED** to the Western District of New York, Buffalo Division.   The Motion is otherwise **DENIED**. Defendants' motion for protective order staying discovery pending resolution of the Motion (Doc. 23) is **DENIED AS MOOT**. The Clerk is directed to transfer this case to the Western District of New York, Buffalo Division and then to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 23rd day of August, 2017.

_____
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record